# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SHANE JOSEPH MITCHELL, | ) | CASE NO. 1:16CV2303 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Shane Joseph Mitchell ("Plaintiff"), challenges the final decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a Report and Recommendation. For the reasons set forth below, its is recommended that the Commissioner's final decision be AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

# I. PROCEDURAL HISTORY

In November 2012, Plaintiff filed applications for POD, DIB, and SSI, alleging a disability onset date of September 1, 2012. (Transcript ("Tr.") 194). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 6).

On June 17, 2015, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 25). On June 26, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 10-19). The ALJ's decision became final on July 16, 2016, when the Appeals Council declined further review. (Tr. 1).

On September 15, 2016, Plaintiff filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1). The parties have completed briefing in this case. (Doc. Nos. 12, 13, 14). Plaintiff asserts the following single assignment of error:

> (1) The ALJ found at step five that the Plaintiff had residual functional capacity for light work based on a significant number of jobs available to Plaintiff. This finding lacks substantial evidence because the record reflects that the Vocational Expert's testimony does not amount to substantial evidence supporting the finding.

(Doc. No. 12 at 1-2).

//

//

//

//

//

//

## II. FACTUAL BACKGROUND[2]

In his decision denying benefits, the ALJ applied the five-step sequential evaluation set forth in the agency regulations.[3] At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity at the time of the disability application. (Tr. 12). At step two, the ALJ concluded that Plaintiff's severe impairments included a congenital anomaly (a missing right forearm), intermittent explosive disorder, borderline intellectual functioning, adjustment disorder with mixed anxiety and depressed mood, and personality disorder. (Tr. 12). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1. (Tr. 13-14).

The ALJ then determined that Plaintiff had the residual functional capacity to perform light work, with a number of additional restrictions relating to his missing right forearm. (Tr. 14). Specifically, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds; sit for 6 hours in an 8 hour workday; stand/walk for 6 hours in an 8 hour workday; never push/pull with the right upper extremity, but can with his left upper

---

[2] Neither party contests the ALJ's assessment of the medical evidence of record. The Court finds that a comprehensive review of the evidence is not necessary to decide the discrete issue before the Court. Therefore, the Court will forgo summarizing the medical evidence.

[3] An ALJ considers five questions in the sequential evaluation: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has "severe" impairments; (3) whether the claimant's conditions meet or medically equal any listed impairment (a Listing); (4) whether the claimant can return to her past relevant work, and; (5) whether a significant number of other jobs exist in the national economy that she could perform. 20 C.F.R. §§ 404.1520, 416.920.

> extremity. He can never reach overhead with the right upper extremity or reach in all directions with the right upper extremity, never handle, finger or feel with the right upper extremity. He can never operate hand controls with the right arm/hand. He can never climb ladders, and scaffolds, and can occasionally crawl. He should never be exposed to unprotected heights, moving mechanical parts, and should never operate commercial vehicles. He is limited to simple routine tasks; he can occasionally have contact with supervisors, coworkers and the public and he is limited to tolerating only routine and gradual workplace changes.

(Tr. 14).

After determining that that Plaintiff had no past relevant work at step four, the ALJ moved on to step five and asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and the above-described residual functional capacity. (Tr. 17-19). The VE testified that such an individual would be capable of performing the requirements of three representative occupations: Laundry Sorter, Remnant Sorter, and Video Monitor. (Tr. 18, 64). The VE further testified that the Dictionary of Occupational Titles ("DOT") classifies both Laundry Sorter and Remnant Sorter as unskilled light exertion level and Video Monitor as unskilled sedentary. (Tr. 64).

However, the VE also acknowledged that the DOT does not address whether these occupations require bilateral arm and hand use. (Tr. 18-19, 65). Thus, based on the DOT alone, it was not evident whether an individual with one arm, such as Plaintiff, would be able to perform these jobs. While the DOT was silent on this issue, the VE was able to testify that based on his field experience and his interpretation of the DOT job description, an individual with Plaintiff's right arm/hand limitations would be able to perform this work. (Tr. 65).

In his written decision, the ALJ acknowledged that the DOT does not address whether use of both arms is required to perform the identified occupations. (Tr. 18-19). He concluded, pursuant to Social Security Ruling 00-4p, that the VE's testimony was consistent with the

information contained in the DOT. (Tr. 18, 19, 65). The ALJ, noting that the VE's testimony was based on the DOT description and his job experience in the field, concluded that Plaintiff was capable of performing the requirements of the three identified occupations. (Tr. 18-19). As such, the ALJ determined that Plaintiff was not disabled. (Tr. 19).

### III. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.

2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

## V. ANALYSIS

Plaintiff maintains that the ALJ erred by relying on the VE's testimony that Plaintiff could perform, without the use of his right arm, the identified occupations of Laundry Sorter, Remnant Sorter, and Video Monitor.  First, Plaintiff points out that both the Laundry Sorter and Remnant Sorter jobs are classified as light work.  He argues that because his assigned RFC is inconsistent with the definition of light work as provided in Social Security Ruling 83-10, he should be foreclosed from performing any job that is so classified.  SSR 83-10 defines "light work":

> 2. Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. *A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work*; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). *Relatively few unskilled light jobs are performed in a seated position.*
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. *Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.* Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. *They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.*

SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *5 (emphasis supplied by Plaintiff). Plaintiff contends that because he can never use his right upper extremity or his right arm or hand and never climb ladders or scaffolds, based on the above-quoted definition, Plaintiff is incapable of light or sedentary work.

The Court disagrees. Although Plaintiff is likely correct that because of his missing limb he is unable to perform a *full* range of light work, there is nothing in the above definition that would categorically foreclose an individual without functional use of one arm from performing light work with additional limitations. Indeed, another Social Security Ruling contemplates that individuals who have no use of an upper extremity may be capable of "light work activity with additional limitations because of loss of bimanual manipulation and difficulty or inability to handle bulky objects." SSR 83-12, 1983 WL 31253, at *4. That Ruling explains that

"[e]xperience with persons who have lost the use of an upper extremity has shown that their potential occupational base is between the occupational bases for Table No. 1 (sedentary work) and Table No. 2 (light work)." *Id.* And, recognizing that "the total number of occupations within [such persons'] RFCs is less than the number represented by a full or wide range of light work," the Ruling advises that a vocational specialist "will be able to determine the size of the remaining occupational base, cite specific jobs within the individual's RFC, and provide a statement of the incidence of those jobs in the region of the individual's residence or in several regions of the country." *Id.*

This is precisely what happened in this case. The VE recognized that given the existence of Plaintiff's right upper extremity limitations, the number of light and sedentary jobs to which Plaintiff would be suited would be diminished. The VE testified that "the DOT does not address unilateral, bilateral arm and hand use." Thus, in accordance with SSR 83-12, he "interpret[ed] the jobs that [he] cited based on the DOT description, as well as [his] experience with these jobs in the field, that they can be performed per the limitations and within the limitations of the hypotheticals." (Tr. 65). The Court rejects Plaintiff's assertion that because of his right upper extremity limitation, Plaintiff is, by the definitions set forth under the regulations, incapable of any light work.

Plaintiff also maintains that because there was a conflict between the VE's testimony and the DOT, there should have been a reasonable explanation for the conflict. Pursuant to Social Security Ruling 00-4p, "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. It is the ALJ's duty to "inquire, on the record, as to whether or not there is such

8

consistency." *Id.* Where there is a conflict, the ALJ must "elicit a reasonable explanation for the conflict" before relying on the vocational expert. *Id.*

In the present case, the ALJ asked the VE whether his testimony was consistent with the DOT, in accordance with SSR 00-4p, and the VE answered in the affirmative. Plaintiff fails to reasonably establish the existence of a conflict between the VE's testimony and the descriptions of the identified occupations contained in the DOT. It is undisputed that the DOT is silent as to whether the occupations required unilateral or bilateral use of the right upper extremity. The Sixth Circuit has concluded that where the DOT does not address a particular limitation in relation to a given occupation, a VE's testimony on that score supplements rather than contradicts it. *See Forrest v. Comm'r*, 591 F. App'x 359, 364 (6th Cir. 2014) (where the DOT did not address whether jobs have a sit/stand option, the "vocational expert's testimony supplemented, rather than conflicted with, DOT job descriptions."); *See also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir.2009) (finding no conflict where a vocational expert testified about an occupation that did not specifically appear in the DOT ); *Zblewski v. Astrue*, 302 Fed.Appx. 488, 494 (7th Cir.2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT."). Thus, in the present case, there was no contradiction between the VE's testimony and the DOT because the VE testified about an issue that the DOT does not address, i.e. whether the identified occupations require bilateral use of the arms.

Plaintiff cites two cases in support of his position, but the Court finds them distinguishable. In the first case, a U.S. Magistrate Judge found an insufficiently unexplained conflict between VE testimony and the DOT, where, based on the testimony of a vocational

9

expert, the ALJ concluded that the occupation of "usher" would accommodate the limitations of the claimant, which included the inability to use her left arm. *Talbert v. Commissioner of Social Security*, Case No. 1:15cv468, 2016 WL 3387308 (S.D. Ohio June 15, 2016). The court, however, pointed out that the DOT specifies that the job of usher requires occasional reaching, handling, and fingering, but the VE's testimony admittedly contradicted with this requirement. *Id.* at *8. In particular, the court indicated that there was some question as to whether a person could take tickets and rip them in half with one hand and whether such a person could assist in changing advertising displays. *Id.* at *8-9. Thus, given that the VE's testimony regarding reaching and handling conflicted with the DOT listing for usher, the court concluded that it was unclear whether a one-handed person could perform the job requirements. *Id.* at *9. In addition, the court noted that the VE was equivocal as to the number of usher jobs that existed in the national economy. *Id.* at *10. The court accordingly concluded that substantial evidence did not support the ALJ's decision at step five.

In the second case, the magistrate judge concluded that the ALJ failed to adequately explain a conflict between the VE's testimony and a companion publication to the DOT. *Bennett v. Comm'r of Soc. Sec.*, Case No. 1:16cv227, 2016 WL 7395795 (N.D. Ohio Dec. 2, 2016). In that case, the ALJ limited the plaintiff to occasional overhead reaching with the non-dominant upper left extremity, and the VE testified that an individual with such a limitation could perform the requirements of three different occupations – Paint Spray Inspector, Laboratory Sample Carrier, and Hand Can and Closing Machine Tender. *Id.* at *6. Noting that all three of the identified jobs required frequent reaching, the magistrate judge determined that the ALJ had

failed to explain this discrepancy where plaintiff's overhead reaching was limited to occasional. *Id.* at *6-7. The matter was accordingly remanded for further proceedings.

Here, unlike *Talbert* and *Bennett*, there is no conflict between the VE's testimony and the DOT. In both of those cases, the DOT specified particular limitations in connection with the occupations identified by the VE. In *Talbert*, occasional reaching went along with the job of usher, and in *Bennett*, frequent reaching went along with Paint Spray Inspector and the others. In the present case, none of the identified occupations specify whether use of the bilateral or unilateral upper extremities is required. As already discussed, when the DOT is silent with respect to a particular limitation, the Sixth Circuit has held that the regulations authorize a VE to fill in the gap, without explanation. The requirement that the ALJ provide a reasonable explanation arises when there is a conflict, and in the present case, as already discussed, there was no conflict.

Finally, Plaintiff argues that the VE's testimony failed to establish that the identified occupations represent a significant number of jobs in the local and national economy. Under the regulations, if a claimant without past relevant work is able to make an adjustment to other work that exists in significant numbers in the national economy, then he is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g), 404.1566, 416.966. Work exists in the national economy when it "exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966. "It does not matter whether—(1) Work exists in the immediate area in which [claimant] live[s]; (2) A specific job vacancy exists for [claimant]; or (3) [Claimant] would be hired if [he or she] applied for work." *Id.*

11

In this case, the VE testified that between the three identified occupations, there are 201,880 jobs available to Plaintiff in the national economy. Plaintiff fails to establish that this figure does not amount to a significant number, as his reliance on *Frommel v. Commissioner* of *Social Security*, 2015 WL 3970147, *4-5 (S.D. Ohio June 10, 2015), is misplaced. In *Frommel*, the VE testified that there were 730 photocopy machine operator jobs, 21,410 cashier jobs, and 1,200 lens inserter jobs available in the local area. *Id.* at *3. The district court determined that of those nearly 25,000 jobs only the photocopy job actually accommodated claimant's limitations. *Id.* In addition, the court questioned whether given recent technological advances, there actually existed 730 photocopy machine operator jobs in the local economy. *Id.* at *4. The case was accordingly remanded for reassessment.

The number of jobs at issue here, over 200,000, is far greater than that in *Frommel*, approximately 25,000. And, unlike *Frommel*, Plaintiff has not demonstrated that the number of jobs which the VE testified existed is somehow inflated or unreliable.[4] The Court accordingly rejects Plaintiff's argument that this matter should be remanded to determine whether a significant number of jobs exist in the economy.

---

[4] For the first time, in his reply brief, Plaintiff contends that the Occupational Employment Statistics Database from the Bureau of Labor Statistics contradicts the VE's testimony that over 200,000 jobs exist in the national economy. This court is not obligated, and so declines to consider, issues raised for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                                        *s/Jonathan D. Greenberg*
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge

Date: July 24, 2017

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**